UNITED STATES of America

v.

Walter Lefight CHURCH, Defendant.

No. 1:00CR00104.

United States District Court,
W.D. Virginia,
Abingdon Division.

Aug. 5, 2002.

Thomas J. Bondurant, Jr., Anthony P. Giorno, Office of the United States Attorney, Roanoke, VA, for United States of America.

James C. Turk, Jr., Stone, Harrison & Turk, P.C., Radford, VA, Beverly M. Davis, Davis, Davis, Davis & Davis, Radford, VA, for defendant.

## OPINION AND ORDER

JONES, District Judge.

The defendant has filed a motion requesting transfer and change of venue based on pretrial publicity in this case, as well as the publicity surrounding the recent trial of his co-defendant. I find that there is no presumed prejudice due to such publicity; therefore, at this time I will deny the defendant's motion.

### I

The defendant, Walter Lefight Church, and his co-defendant, Samuel Stephen Ealy, are charged with various federal crimes relating to the murders of Robert Davis, Una Davis, and Robert Hopewell, Jr. on April 16, 1989. By agreement of the parties, the defendants were severed for trial, with Ealy to be tried first. The trial of Ealy began on May 14, 2002, and the jury rendered a guilty verdict on June 6, 2002. The case proceeded to the penalty phase and the jury found against the death penalty. The trial of Church is scheduled to begin on September 4, 2002, and the government will again seek the death penalty should he be found guilty. Church has filed a motion to transfer venue based on pretrial publicity, claiming that newspaper articles and community discussion relating to Ealy's trial and Church's upcoming trial have created a prejudicial environment from which a fair and impartial jury cannot be selected.

### II

The Federal Rules of Criminal Procedure authorize a change of venue in federal criminal trials if "there exists in the district where the prosecution is pending so great a prejudice against the defen-

dant that the defendant cannot obtain a fair and impartial trial." Fed.R.Crim.P. 21(c). The defendant, as the moving party, has the burden of establishing prejudicial pretrial publicity. *See Wansley v. Slayton,* 487 F.2d 90, 94 (4th Cir.1973).

■ A two-step process is required in evaluating motions for a change of venue. *See United States v. Bakker,* 925 F.2d 728, 732 (4th Cir.1991). First, the trial judge must determine whether the publicity surrounding the case is "so inherently prejudicial that trial proceedings must be presumed to be tainted." *Id.* In such a tainted case, the court should grant the defendant's request for change of venue before the jury selection begins. *See id.* Prejudice can be presumed under this first step "only in extreme cases." *Id; see, e.g., Rideau v. Louisiana,* 373 U.S. 723, 727, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (holding that there was presumed prejudice where videotape of defendant's confession was broadcast on television and was viewed by almost two-thirds of the community's population). In making its determination under the first step, the court should consider more than just the volume of publicity stimulated by the upcoming trial. *See Bakker,* 925 F.2d at 732 ("Sheer volume of publicity alone does not deny a defendant a fair trial.") Other factors to be considered include whether the publicity is inflammatory or merely factual, whether it involves matters directly or tangentially related to the defendant's case, whether the publicity is recent, whether a change of venue would decrease the risk of juror bias, and the source of the publicity. *See Wansley,* 487 F.2d at 93–94; *Bakker,* 925 F.2d at 732–33.

■ In most cases, there will be no presumed prejudice, and the court should proceed to the second step, which involves a voir dire examination of potential jurors to determine if there is actual prejudice due to pretrial publicity. *See Bakker,* 925 F.2d at 732. The voir dire questioning should be directed at determining if any of the jurors have been exposed to pretrial publicity, and if so, whether they hold any opinions about the case. It is not necessary " 'that jurors be totally ignorant of the facts and issues involved.... It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.' " *Id.* at 734 (quoting *Irvin v. Dowd,* 366 U.S. 717, 722–23, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)). If the court is convinced that an impartial jury can be impaneled, a change of venue would not be justified. *See id.* at 732.

■ With respect to the first step, I do not find that the pretrial publicity surrounding the defendant's case has presumably tainted the jury. The evidence submitted by the defendant, consisting mainly of local newspaper articles, does not suggest that the surrounding communities have been inundated with prejudicial material. Of the forty-five articles presented to the court, more than thirty of them relate to Sam Ealy's trial, with only brief mention, if any, of Church's alleged involvement in the murders. All of the articles are generally factual in nature, summarizing the events of the trial and the evidence presented by both the prosecution and the defense. Although some of the articles recount the details of the brutal murders, including the death of fourteen-year-old Robert Hopewell, Jr., I cannot say that any of the accounts are inflammatory. Ealy's trial concluded only three months before Church's trial is scheduled to begin; therefore, the recency of the articles is a cause for some concern and increases the likelihood that potential jurors will remember details that they read. And although the defense attorneys were occasionally

quoted in the newspapers, they certainly were not the source of the publicity, as was the defendant in the *Bakker* case. *See* 925 F.2d at 733.

Four of the remaining newspaper articles relate to the Supreme Court's recent decision relating to the constitutionality of the death penalty with respect to the execution of mentally retarded persons. *See Atkins v. Virginia,* —— U.S. ——, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Presumably, the defendant has introduced these articles as evidence of negative publicity. However, considering that the defense plans to argue that Church is not subject to the death penalty on the basis of mental retardation, it is likely that these articles would benefit the defendant rather than harm him, in light of the fact that the Court ruled that executing a mentally retarded defendant constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See id.* at 2252.

Finally, the ten affidavits submitted to the court do not demonstrate that an impartial jury cannot be found.[1] The affidavits are from residents of Tazewell County, where the crime occurred, and the nearby surrounding areas. It can be assumed that people living near the scene of the crime would be familiar with the case and have followed the events of Ealy's trial in the newspaper. However, the jury pool for Church's trial will not be comprised only of residents of Tazewell County. There will be potential jurors, living in other counties in this division, who would not have such a compelling reason to take interest in the facts of this case.

Considering all the evidence, I find that the defendant has failed to meet his burden of showing that the pretrial publicity in this case is so " 'recent, widespread, and highly damaging' " that prejudice should be presumed. *See Wansley,* 487 F.2d at 93 (quoting 1 Wright, Federal Practice and Procedure § 342). I will, however, proceed to step two during jury selection in this case to determine whether actual prejudice exists. At that time, I will conduct an appropriate voir dire examination of the potential jurors, including individual sequestered questioning of any juror who has prior knowledge of this case. If, after such questioning, I find that a fair and impartial jury cannot be impaneled, I will revisit this issue.

### III

For the foregoing reasons, it is **ORDERED** that the defendant's motion to change venue (Doc. No. 283) is denied without prejudice.

---

1. The affidavits all state, in part, as follows: I am familiar with the allegations of capital murder against Walter "Pete" Church and Samuel S. Ealy. I am familiar with these allegations because of talk in the community among the citizens about the case, which is widespread, and the widespread publicity concerning the case from the newspapers circulated in the community, television news, and radio. I am also familiar with the sentiment in the community concerning this case and the victims involved.

In my opinion, a fair trial, including the presumption of innocence would not be possible ... due to, among other things, the nature of the charges, widespread publicity, and community feelings.

(Mem.Supp. Def.'s Mot. for Transfer, Attachment)

There is also an affidavit signed by Barry Dixon Armstrong, a defense investigator, stating that there were many other people, in addition to those who signed statements, who informed Mr. Armstrong that they had reached the conclusion, based on pretrial publicity, that Church was guilty of the crimes charged. (*Id.*)