**UNITED STATES of America,
Plaintiff,**

v.

**J. Richard JAMIESON,
et al., Defendant.**

**No. 3:02 CR 707.**

United States District Court,
N.D. Ohio,
Western Division.

May 22, 2003.

James R. Knepp, II, Esq., Robison, Curphey & O'Connell, John Richard Jamieson, Toledo, OH, Susan Bogart, Law Offices of Susan Bogart, Chicago, IL, N. Stevens Newcomer, Perrysburg, OH, Anthony J. Calamunci, Esq., Calamunci, Groth, Joelson & Manore, David Lee Klucas, Esq., Law Offices of David Klucas, Toledo, OH, Teddy Brindle, Chadsworth, GA, Adrian P. Cimerman, Esq., Zaner & Cimerman, Charles M. Boss, Esq., Boss & Vitou, Maumee, OH, Darlene Lauderdale, Brooklyn, NY, Martin E. Mohler, Esq., Mohler, Bingle & Henderson, Ronald Wingate, Esq., Spiros P. Cocoves, Esq., Toledo, OH, Orrett Ricketts, Brooklyn, NY, Linsey Savage, Lynwood, IL, Stanley L. Hill, Esq., Law Offices Of Stanley L. Hill, Chicago, IL, William Schade, Salem, OR, Steven Jacobson, Office of the Federal Public Defender, Portland, OR, for defendants.

Seth D. Uram, Office of the U.S. Attorney, Toledo, OH, for plaintiff.

### ORDER

KATZ, District Judge.

Before the Court is Defendant Jamieson's renewed and supplemental Motion to Change Venue for Prejudicial Pretrial Publicity. The Court has previously issued an opinion which ruled on the original motion for change of venue and will not fully repeat it's understanding of the law, but will restate its position. It is the Defendant's assertion that under the rules governing pretrial publicity, articles in the Toledo Blade have adversely impacted his ability to receive a fair and impartial trial in the Northern District of Ohio. The Defendant seeks transfer to another district or locale where he asserts he will be able to receive such a fair and impartial trial.

Under Fed.R.Crim.P. 21(a):

> The court upon motion of the defendant shall transfer the proceeding as to that defendant to another district whether or not such district is specified in the defendant's motion if the court is satisfied that there exists in the district where the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district.

The Supreme Court has deemed a change of venue as necessary where the pretrial publicity is so pervasive that it renders the selection of an impartial panel fruitless, necessitating a change of venue. *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). The burden of establishing such prejudicial pretrial publicity rests with the defendant. *United States v. Lindh,* 212 F.Supp.2d 541, 548 (E.D.Va.2002), citing *Wansley v. Slayton,* 487 F.2d 90, 94 (4th Cir.1973). Transfers for a change of venue based upon such pretrial publicity are generally disfavored as the prejudicial effects of pretrial publicity are eliminated through a careful and deliberate voir dire examination. *See United States v. McVeigh,* 918 F.Supp. 1467, 1470 (W.D.Okla.1996).

It is incumbent upon the trial court to determine whether the publicity surrounding the pretrial proceedings are " 'so inherently prejudicial that the trial pro-

ceedings must be presumed to be tainted.'" *United States v. Church*, 217 F.Supp.2d 696, 698 (W.D.Va.2002), quoting *United States v. Bakker*, 925 F.2d 728, 732 (4th Cir.1991). Factors considered in this determination may include the inflammatory nature of the publicity, the temporal proximity of the publicity, as well as the source of the publicity. *Id.*

■ The Defendant has again provided the Court with multiple newspaper articles published primarily in the Toledo Blade, both those concerning this Defendant and others previously charged and/or convicted of fraudulent activity. The Defendant has also, for some reason, included the submission by the United States Attorneys Office of proposed Summary of Indictment and the Defendant's own proposed summary of indictment, both of which were elicited by this Court on April 15, 2003 at the end of a hearing on multiple issues. The submissions also include an audit report by the Toledo Blade for the twelve months ended September 30, 2003, which includes the various counties in Toledo and Southeastern Michigan where the Blade is disseminated.

After reviewing the plethora of submissions, the Court again concludes that the articles are primarily reports of allegations against this Defendant and co-defendants in this case. While those reports may be unflattering in some respects, they appear to report the positions of the Government as stated in the allegations contained in the Indictment, the position of the investors who believe they have been victimized, and agents of the defunct Liberte Capital Group. In some instances the articles contain denials by both this Defendant and James Capwill. The Court concludes that they are not of such an inflammatory nature as to elevate them to the level of presumed prejudice.

The Defendant's counsel has asserted that "recent pretrial publicity when coupled with the tone, tenor and amount of prior publicity are so inherently prejudicial as to taint the trial proceedings." On the contrary, the pretrial publicity in the instant case stands in stark contrast to the carnival atmosphere which was present in *Rideau*, and before that in the famous *Shepard* case. The Court has previously concluded as much and sees no reason to change that conclusion.

A district court recently was confronted with the issue of media attention in a case which received national notoriety. *United States v. Lindh*, 212 F.Supp.2d 541. The Court concluded that media attention alone is insufficient for a transfer of venue and that the real test is whether a "juror can lay aside his impression or opinion and render a verdict based on the evidence presented in Court." *Id.* (quoting *Irvin v. Dowd.* 366 U.S. 717, 722–23, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)). In this Circuit it has been held that the Court must examine the particular circumstances of a case to see if they rise to the level of a "carnival atmosphere" as existed in *Estes* and *Rideau. See Kelly v. Withrow*, 25 F.3d 363, 369 (6th Cir.1994). This Court concludes that no such carnival atmosphere exists.

The most recent and extensive discussion by the Sixth Circuit Court of Appeals concerning the issues now before this Court occurred approximately two months after the October 31, 2003 Memorandum Opinion by this Court. In *Ritchie v. Rogers*, 313 F.3d 948 (6th Cir.2002) the Sixth Circuit discussed at length the issue of "presumed prejudice" in the context of a motion for a change of venue. That case involved continuing publicity concerning the story of a child's murder, which publicity was massive, extensive and continuing in the Dayton, Ohio area. The lower court was considering the issue of pretrial pub-

licity and its impact on a motion for change of venue in the context of a proceeding for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a). However, the analysis applies to this case as well. The Circuit opinion relies extensively on Supreme Court precedent including, but not limited to, *Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). There Justice Powell, in denying for the writ concluded that "voir dire testimony and the record of publicity do not reveal the kind of 'wave of public passion' that would have made a fair trial unlikely by the jury that was impaneled as a whole." *Id.* at 1040, 104 S.Ct. 2885.

The *Ritchie* court discussed both the issues of "presumed prejudice" and "actual prejudice". The district court had relied heavily upon the analysis by the Ohio Appellate Court which affirmed the Petitioner's conviction and the denial of the motion for change of venue;

> The critical issue to be determined is whether Ritchie's right to a fair trial was violated by the pretrial publicity and the trial court's refusal to change venue. *Ritchie has not established the rare case in which prejudice is presumed.* She has also failed to show that the pretrial publicity interfered with the seating of a fair and impartial period. Therefore, cannot say that the trial court abused its discretion by retaining the case for trial in Montgomery County. (Emphasis added)

*State v. Ritchie,* 1997 WL 435698 at *4–9, 1997 OH App. Lexis 3421 at *10–23 (1997).

After analyzing carefully the various approaches which the Supreme Court has

adopted, the court affirmed the lower court's denial of the Writ. In the case at bar, it is clear that the publicity which the Defendant seeks to characterize as pervasive and prejudicial falls significantly short of the massive publicity in *Ritchie* and any other similar case.

■ Further, it is the voir dire process through which the influence of such pretrial publicity is tested as to individual jurors. The prospective jury pool in this Western Division of the Northern District of Ohio draws from twenty-one counties, the farthest of which is located approximately 150 miles from Toledo. Many of these counties are located in rural, agricultural settings and have their own local newspaper. The voir dire process is to test the passions, prejudices and biases of prospective jurors and determine their ability to be fair and impartial in judging the Defendant. In this case, sixty-two prospective jurors from the counties within the Western Division reported for jury service and were examined individually by the Court and counsel during voir dire.[1] Questioning of the panel was based primarily upon a five-page questionnaire completed by the panel during the voir dire and a two-page questionnaire submitted previously by each prospective juror. Of the sixty-two panel members examined, approximately nineteen reported having read/heard media accounts of the case and about five reported having talked about the case prior to voir dire.[2]

In questioning prospective jurors regarding pretrial publicity and other issues, counsel for each party was given adequate opportunity to question prospective jurors

---

1. An additional juror who reported was not examined as she was excused by agreement of counsel because she is currently represented by one of Defendant's attorneys.

2. On the first day of voir dire, an article appeared on the front page of the Toledo Blade Newspaper; however, because of the large geographical area from which the jury pool is assembled, few of the prospective jurors were familiar with the Blade article.

as the Court imposed no time limits upon counsel in examining the panel. In fact, completion of the voir dire consumed two full court days.

Among the sixteen jurors selected for jury service, only two reported having been exposed to pretrial publicity. Following voir dire examination, specifically as to pretrial publicity, the Court determined, based upon their statements that they could do so, that the two panel members exposed to media reports were able to put aside any information garnered from the media and to rely solely upon the evidence presented at trial and the instructions of law given by the Court in reaching their verdict. In fact, each member of the panel selected indicated or articulated his/her ability/willingness to strictly follow the Court's instructions as to the law and to render a verdict based upon the evidence presented at trial.[3] Consequently, the Court determined that each of the jurors selected could serve as fair and impartial jurors who would reach a verdict based upon the evidence presented in court and the Court's instructions of law. At the conclusion of the voir dire, counsel for the parties articulated, on the record, their satisfaction with the jury. A jury has been selected and is presumed to be totally capable of putting aside any knowledge of the contents of pretrial articles and rendering a fair verdict in this case. Even assuming that all of the prospective jurors receive the Toledo Blade and watch local Toledo-based television and/or radio news reports, in the absence of presumed prejudice this Court cannot find the Defendant Jamieson has established his inability to obtain a fair trial in the Northern District of Ohio, Western Division. The offered "proofs" and arguments fall far short of the standard required for a change of venue based on either "presumed" or "actual" prejudice.

Turning to the assertions raised by the Defendant concerning the role of the prosecutor in pretrial publicity, that allegation has no impact upon or relevance to the subject motion.

For the reasons stated above the Court again denies the motion of the Defendant Jamieson for a change of venue.

IT IS SO ORDERED.

---

3. Question one of Schedule B of the five-page questionnaire asks:

If you are selected to sit on this case, will you be able to render a verdict solely on the evidence presented at the trial and in the context of the law as the Court gives it to you in its instructions, disregarding any other ideas, notions or beliefs about the law that you may have encountered in reaching your verdict.

Question seven asks:

Do you believe you will be able to set aside any sympathy or bias you may have to reach a fair and impartial decision based upon the evidence as presented in the courtroom?